UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **MICHAEL JONES SR** | **CASE NO. 6:18-CV-00946** |
| **VERSUS** | **JUDGE TERRY DOUGHTY** |
| **TRAVELERS INDEMNITY CO ET AL** | **MAG. JUDGE CAROL WHITEHURST** |

**RULING**

This is a wrongful death and survival action brought by Plaintiff Michael Jones, Sr. ("Jones") against Defendants Subcontracting Concepts, LLC ("SCI"), Hackbarth Delivery Services, Inc. ("Hackbarth"), and The Travelers Indemnity Company ("Travelers") following the death of Michael Jones, Jr ("Jones, Jr."). Hackbarth and Travelers are no longer parties in the action.

Pending before the Court is a Motion for Summary Judgment filed by Defendant SCI seeking judgment as a matter of law dismissing Plaintiff's claim against it because of its alleged independent contractor status [Doc. No. 214]. Plaintiff has filed an Opposition [Doc. No. 219], which adopts its previous Opposition [Doc. No. 173]. SCI has filed a reply to the opposition [Doc. No. 222].

For the following reasons, SCI's Motion for Summary Judgment is **GRANTED**.

I.     **FACTS AND PROCEDURAL HISTORY**

This suit arises from a motor vehicle accident that occurred on a service road off of Interstate 49 in St. Landry Parish in Louisiana on December 8, 2017, which resulted in two fatalities [Doc. No. 153-2]. The son of Plaintiff, Jones, Jr., was the passenger in a UPS delivery truck that was struck head-on by a Chevrolet cargo van operated by Katrina Romine ("Romine").

Both Jones, Jr. and Romine perished in the accident. This suit was originally filed in St. Landry Parish, Louisiana, but was removed to this Court on July 18, 2018 [Doc. No. 153-2].

At the time of the accident, Romine was making deliveries for Hackbarth, a commercial delivery service [Doc. No. 163-1]. She had just left the Hackbarth terminal in Lafayette and was on her way to her first delivery stop. Hackbarth employees are paid through a company called SCI. SCI is what is commonly referred to as a third-party administrative (TPA) service provider [Doc. No. 214-1]. SCI's sole base of operation in Queensbury, New York. TPAs provide back office administrative support to logistics brokers and owner operators by processing payments to independent contractors who may perform delivery services for other businesses [*Id*.]

SCI becomes involved with these independent contractors when a logistics broker, such as Hackbarth, elects to procure the services of an independent contractor. The logistics broker provides independent contractors with SCI's online suite, which allows independent contractors to access a set of contracts to be executed by the independent contractor and provide SCI with banking information. At the end of each pay period Hackbarth provides SCI with a spreadsheet listing each independent contractor and the amount of each independent contractors' settlement [*Id*]. Under the agreement executed between Hackbarth and SCI, SCI reviewed and verified transportation invoices from drivers and paid compensation to drivers for the courier services provided to or on behalf of Hackbarth. Hackbarth paid fees to SCI for the services provided. [Doc. No. 163-1].

If an independent contractor believes there is an issue with the amount of a settlement, SCI forwards the information to Hackbarth and follows Hackbarth's instruction regarding the amount of the settlement. SCI has no way to know if an agreement to split a settlement amount is made between various independent contractors. SCI does offer independent contractors additional

2

services and programs, but these services and programs are optional, meaning that individual independent contractors have to opt in to the programs and would be charged an additional fee for his/her involvement with that service or program. The extent of the contractual relationship between SCI and Hackbarth is to provide the above described payroll functions and does not involve the day-to-day operations of the independent contractors and/or Hackbarth. [Doc. No. 214-1].

Defendants aver that Romine was "brought to Hackbarth" by Bryan Rose ("Rose"), an independent contractor driver, in order to expand his business to become a master contractor [Doc. No. 153-2 at p. 4]. Plaintiff avers that Romine was hired by a manager at Hackbarth, and she was told she would be driving one of Rose's additional vehicles [Doc. No. 163-2]. All agree that Rose was paid by SCI for the amount it cost to let another driver use his vehicle for that day. Both agree that Romine was driving Rose's vehicle at the time of the accident.

Romine executed an Owner/Operator Agreement and an Independent Contractor Acknowledgement Form on June 27, 2017. Bryan Rose executed the same set of agreements.

Rose has been deposed in this matter twice. Rose, a master contractor, would bid on a route with Hackbarth and he would typically pay a subcontractor a certain amount to perform deliveries for him. Rose was responsible for all of the expenses related to his business, his own equipment, tools and supplies, maintenance of the vehicle, and fuel for the vehicle. In his deposition, Rose maintained that he believed he was an independent contractor, and he would not receive any instruction on how to perform a delivery from SCI. SCI was only processing payments and his checks, and he did not have regular contact with SCI. [Doc. No. 214-6, pp. 24, 18, 76].

In this instance, Rose was a driver who had an additional vehicle that he provided to Romine. Rose established the daily rate to use his vehicle, reported it back to Hackbarth, and he would be paid that rate by direct deposit from SCI.

After hiring her, Hackbarth obtained copies of Romine's drivers' license and social security card, proof of insurance on the vehicle she would be operating, and ran a background check on her. Hackbarth requires drivers to fill out paperwork provided by SCI, which includes an "Owner/Operator Agreement" [Doc. No. 153-2]. Romine filled out the pre-employment paperwork, including the SCI documents, at Hackbarth's Lafayette terminal [Doc. No. 163-2]. SCI plays no role in deciding whether Hackbarth will hire a prospective driver, rather, SCI acts as a third-party payroll company for Hackbarth drivers. SCI paid the drivers every two weeks by direct deposit.

Plaintiff filed suit against Hackbarth on the basis that Romine was in the course and scope of her employment with Hackbarth at the time of the accident, resulting in Hackbarth being vicariously liable for the actions of its employee. Plaintiff also filed suit against Travelers, the commercial automobile liability insurance provider to Hackbarth. Additionally, Plaintiff filed suit against SCI because Romine executed an "Owner/Operator Agreement" with SCI at the time that she was hired at Hackbarth. SCI, Hackbarth, and Travelers maintain that they are entitled to the independent contractor defense because of the agreement that Romine signed.

SCI previously filed a Motion for Summary Judgment [Doc. No. 126]. Jones filed an Opposition [Doc. No. 173] to that Motion. Within the Opposition, Jones states:

> Nonetheless, SCI's statements about its very minmal role in this entire process are accurate and supported by the evidence. Essentially, SCI's only role was to process payroll for Hackbarth's drivers, all as directed by Hackbarth. Thus, if the Court can look at SCI and Ms. Romine's relationship completely independent of Hackbarth, then Plaintiff would submit that it agrees that a review

4

>of the *Hickman* factors would reveal that SCI did not have the requisite amount of control necessary to be considered Ms. Romine's employer and they should be dismissed from the case.

[Doc. No. 173, p. 3].

The issues have been fully briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

### A. SUMMARY JUDGMENT

Summary judgment shall [be] grant[ed] … if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.

### B. ANALYSIS

The issue here is whether Romine and Rose were employees or independent contractors of SCI.

Louisiana law, which governs the vicarious liability of an employer, states that employers are answerable for the damage occasioned by their employees in the functions in which they are employed. LSA—C.C. art. 2320. In order for an employer to be held liable under this statute, plaintiffs must show that there was an employer-employee relationship, and that the tort was committed while the employee was acting within the scope and during the course of his employment. *Bouquet v. Williams*, 2016-0134 (La. App. 1 Cir. 10/28/16), 206 So. 3d 232, *writ denied*, 2016-2077 (La. 1/9/17), 214 So. 3d 870, and *writ denied*, 2016-2082 (La. 1/9/17), 214 So. 3d 871; *see also Fonseca v. City Air of Louisiana, LLC*, 2015-1848 (La. App. 1 Cir. 6/3/16), 196 So. 3d 82. An employer is not liable for the torts that are committed by those deemed independent contractors who are acting within their contractual duties. *Id*. However, there are two exceptions to this general rule, which are "(1) where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or control the work of the independent contractor." *Ledent v. Guar. Nat. Ins. Co.*, 31,346 (La. App. 2 Cir. 12/28/98), 723 So. 2d 531, 537.

The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis. An independent contractor relationship exists when (1) a valid contract exists between the parties, (2) the work is of an independent nature, (3) the contract allows for the work to be done according to the contractor's own methods, without being subject to control and direction, except as to the result of the services to be rendered, (4) a specific price for the overall undertaking is agreed upon, and (5) the duration of the work is for a specific time and not subject to termination at the will of either party. *Hickman v. S. Pac. Transp. Co.*, 262 La. 102, 262 So. 2d 385, 390–91 (1972); *Fonesca*, 196 So.3d at 87. The most important inquiry is whether the principal retained the right to control the work. In applying this test, it is not the supervision and control which is actually exercised that is significant; the most important

question is whether from the nature of the relationship, the right to do so exists. *Hickman*, 262 La. 102, at 391.

Each of the five (5) independent contractor factors will be analyzed separately.

### i. A valid contract exists between the parties.

The facts establish that there was, in fact, a contract between the parties here. Romine and Rose both signed the Owner/Operator Agreement that explicitly provided "[t]he Owner/Operator agrees that no employer/employee relationship is created under this Agreement as a result of the relationship between SCI and the Owner/Operator or its Customers." [Doc. No. 244-4, p. 8]. Beyond that, Romine and Rose also executed an Independent Contractor Acknowledgment Form, which detailed the relationship between Romine, Rose, and SCI.

### ii. The work is of an independent nature.

In *Hickman*, the court found that the work was not of an independent nature because the driver's sole source of employment was with Southern Pacific. Moreover, the work of the plaintiff in *Hickman* was controlled by an agent of Southern Pacific when he was given time deadlines and an order in which to conduct pickups and deliveries.

The facts here are distinguishable from *Hickman*. SCI, unlike Southern Pacific, does not have any control over the manner in which Romine and Rose made deliveries. It does not require Romine or Rose to wear uniforms, and it does not set a schedule for Romine and Rose. Further, SCI was not Romine and Rose's sole source of employment, which is evidenced by the IC Acknowledgment Form signed by both parties, in which it was acknowledged that Rose and Romine could choose to perform delivery services for other courier companies. The work between Rose, Romine, and SCI is even distinguishable from the work between Rose, Romine, and Hackbarth. Hackbarth did control the times for deliveries, the order of deliveries, and required its

workers to wear uniforms, to name a few details. SCI has established that the work between it and Rose and Romine was of an independent nature.

>  iii. **The contract allows for the work to be done according to the contractor's own methods, without being subject to control and direction, except as to the result of the services to be rendered.**

In *Hickman*, the court ruled that the driver was not free to carry out work by his own method because of the requirements Southern Pacific put on its drivers. For example, the drivers had a time in which they had to arrive at the depot, things had to be loaded and unloaded at a warehouse, drivers had to obtain bills of lading, etc. Drivers were also supervised by a depot agent in day-to-day operations.

Unlike the driver in *Hickman*, the work here was done at the will and by the methods of the independent contractor drivers, according to the Independent Contractor Acknowledgment Form signed by Rose and Romine. In particular:

> the Owner/Operator and its drivers are free to select their own routes or the order of their deliveries, taking into account the needs and deadlines of their Customers. The Customer may have specific requirements and the Owner/Operator must decide to accept or decline the offer of work if they cannot meet those delivery requirements.

[Doc. No. 214-4, pp. 3-4]. There are no facts showing that SCI had any control or direction over Rose, Romine, or any other independent contractor drivers. Not only that, the Independent Contractor Acknowledgment Form that both parties signed also stated that drivers were entitled to set their own hours, accept or reject deliveries, and that the only instruction for deliveries they were to receive were from customers. So, although the language in the Form does favor a finding that SCI did not control deliveries, the facts of the case tend to show that SCI had virtually zero involvement and/or control over any of its independent contractor's activities. The Court does not believe that SCI had the capability to issue any sort of control over the nature of Rose and Romine's work, based on the facts of this case.

>  iv. **A specific price for the overall undertaking is agreed upon.**

The facts here sufficiently establish that SCI served as nothing more than a third-party payroll company to Hackbarth and its employees. SCI did not set fees or prices for deliveries. Rather, the Owner/Operator Agreement provided that the independent contractors would be paid a fee based on the schedule of rates negotiated by him for each completed delivery or negotiated route. The facts indicate that the drivers were paid based on their work provided by Hackbarth, who then reported the fee schedules to SCI, who then paid the independent contractor drivers. As this Court has previously stated, SCI serves as nothing more than a third-party payroll to Hackbarth employees like Romine and Rose.

>  v. **The duration of the work is for a specific time and not subject to termination at the will of either party.**

In its Owner/Operator Agreement, Romine and Rose agreed to a ninety-day term, which was subject to renewals, and subject to termination at the will of either party. If the party desired termination, then ten (10) days' notice must be given. There were penalties for failure to give notice, like a $250 fine, but the penalty was something that SCI did not apply unilaterally, instead it would only apply the penalty at the instruction of Hackbarth. [Doc. No. 214-4, p. 6].

### C. PRIOR RULING

The Court notes that in a previous Ruling [Doc. No. 188], summary judgment was denied as to Hackbarth, Travelers, and SCI. The reasoning for that denial was that Defendants did not establish sufficient facts showing that Romine and Rose's work met the criteria for independent contractor status. The Court believes that SCI has overcome this deficiency.

Jones filed an Opposition to the Motion for Summary Judgment Filed by Subcontracting Concepts, LLC [Doc. No. 173], which he adopted in his Opposition to the instant Motion [Doc.

No. 219], wherein he stated "If Katrina Romine's relationship with Hackbarth and SCI can be looked at separately, then SCI is entitled to Summary Judgment." The Court agrees.

The facts SCI has presented in the pending Motion are sufficient enough to separate it from Hackbarth, and the Court agrees with Jones that because the two defendants can be looked at separately, SCI is entitled to summary judgment.

In the Court's prior Ruling [Doc. No. 188], the Court held that even if Defendants had satisfied the five factors for independent contractor status, Plaintiff established sufficient facts showing that Defendants reserved the right to supervise and control the work of their drivers. The "independent contractor" drivers who delivered for **Hackbarth** went through the same hiring process as employee drivers, were given the same ID badge, t-shirt, and instructions as employee drivers, and were expected to fulfill duties to **Hackbarth** customers in the same manner as employee drivers. Defendants quoted language from the owner/operator agreement Romine signed with them when she was employed, that "she was to receive no instruction about how to perform deliveries except those received from customers." In its own memoranda, **Hackbarth** stated an exhaustive list of requirements it was obligated to comply with in keeping with the agreements with its customers. These requirements were specifically curated for the delivery drivers in their delivery of the product. For example, some of the requirements detailed the time with which products should be delivered, required informing **Hackbarth** of any service interruptions, caused drivers to be subject to security and regulatory evaluations and inspections, and required criminal background checks and drug testing of drivers prior to handling the customer's product. Drivers like Romine were given customer requirements and were expected to fulfill **Hackbarth's** contractual obligations with the customers. **Hackbarth** even acknowledged that there were driver

audits, service departments for the drivers, uniforms, ID badges, background checks, and drug screening as a matter of compliance with its customers' expectations.

These facts tended to show that even with this independent contractor agreement that was signed between Romine and Hackbarth, there remained a genuine issue of material fact concerning the level of Hackbarth's supervision and control over its alleged "independent contractor workers." However, the same cannot be said as to SCI.

SCI has established for purposes of summary judgment that Romine and Rose were independent contractors of SCI and that there was not an employer/employee relationship between SCI, Romine, Rose, or any other courier driver.

### III.  CONCLUSION

For the reasons set forth above, Defendant SCI's Motion for Summary Judgment [Doc. No. 214] is **GRANTED**. Plaintiff Michael Jones' claims against SCI are hereby **DISMISSED WITH PREJUDICE.**

MONROE, LOUISIANA this 23rd day of August 2021.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE